John P. Kristensen (Cal. State Bar No. 224132)
Jesenia A. Martinez (Cal. State Bar No. 316969)
Alejandro Marin (Cal. State Bar No. 329185)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: (310) 507-7924
Facsimile:  (310) 507-7906
*john@kristensenlaw.com*
*jesenia@kristensenlaw.com*
*alejandro@kristensenlaw.com*

Jarrett L. Ellzey (*Pro Hac Vice*)
Leigh S. Montgomery (*Pro Hac Vice*)
Ghazzaleh Rezazadeh (*Pro Hac Vice*)
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Facsimile:  (888) 995-3335
*jarrett@ ellzeylaw.com*
*leigh@ellzeylaw.com*
*ghazzaleh@ellzeylaw.com*

*Attorneys for Plaintiffs*

### THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| REBECCA ANSPACH, an individual; KARLI BECKETT, an individual; MARISSA DURAN, an individual; AKILAH HAMMOND, an individual; KIMBERLY ANN HOYER, an individual; MANDY JOHNSON, an individual; SHANON NUCKOLS, an individual; VANESSA RUIZ, an individual; ANDJELA SUKA, an individual, NELI VELASQUEZ; an individual MARLENE SILVA, an individual; MIKAYLA BELLAMY, an | Case No.: 5:19-cv-02184-JGB-SP <br><br> **COLLECTIVE ACTION** <br><br> **CONSOLIDATED COMPLAINT FOR DAMAGES** <br><br> 1. **Failure to Pay Minimum Wage, 29 U.S.C. § 206;** <br> 2. **Failure to Pay Overtime Wages, 29 U.S.C. § 207;** <br> 3. **Unlawful Taking of Tips, 29 U.S.C. § 203;** <br> 4. **Illegal Kickbacks, 29 C.F.R. § 531.35;** |

individual; and CHELLSEE LLOYD, an individual,

     Plaintiffs,

  vs.

68-444 PEREZ, INC.  dba SHOWGIRLS, a California Corporation; ABDUL WAHAB SHAWKAT, an individual; SAHAR SHAWKAT, an individual; DOE MANAGERS 1-3; and DOES 4-10, inclusive,

     Defendants.

5. **Forced Tip Sharing, 29 C.F.R. § 531.35;**

6. **Failure to Pay Minimum Wage in Violation of Cal. *Lab. Code* §§ 1194 & 1197;**

7. **Failure to Pay Overtime Wages in Violation of Cal. *Lab. Code* §§ 510, 1194, & 1197;**

8. **Failure to Furnish Accurate Wage Statements, Cal. *Lab. Code* § 226;**

9. **Waiting Time Penalties, Cal. *Lab. Code* §§ 201-203;**

10. **Failure to Indemnify Business Expenses in Violation of Cal. *Lab. Code* § 2802;**

11. **Compelled Patronization of Employer and/or Other Persons in Violation of Cal. *Lab. Code* § 450; and**

12. **Unfair Competition in Violation of Cal. *Bus. & Prof. Code* §§ 17200, *et seq.***

**DEMAND FOR JURY TRIAL**

   Plaintiffs REBECCA ANSPACH ("Anspach"), KARLI BECKETT ("Beckett"), MARISSA DURAN ("Duran"), AKILAH HAMMOND ("Hammond"), KIMBERLY ANN HOYER ("Hoyer"), MANDY JOHNSON ("Johnson"), SHANON NUCKOLS ("Nuckols"), VANESSA RUIZ ("Ruiz"), ANDJELA SUKA ("Suka"), NELI VELASQUEZ ("Velasquez"), MARLENE SILVA ("Silva"), MIKAYLA BELLAMY ("Bellamy") and CHELLSEE LLOYD ("Lloyd") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

///

## I. <u>NATURE OF THE ACTION</u>

1.     Plaintiffs allege causes of action against defendants 68-444 PEREZ, INC. dba SHOWGIRLS ("Defendant" or "Showgirls"), a California Corporation, ABDUL WAHAB SHAWKAT ("Defendant" or "Mr. Shawkat"), an individual, SAHAR SHAWKAT ("Defendant" or "Ms. Shawkat"), an individual, DOE MANAGERS 1-3, and DOES 4-10, inclusive (collectively, "Defendants") for damages due to Defendants evading the mandatory minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and illegally absconding with Plaintiffs' tips.

2.     As a result of Defendants' violations, Plaintiffs seek to recover all tips kept by Defendants and their employees, liquidated damages, interest, and attorneys' fees and costs pursuant to the FLSA.

3.     These causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants in the four (4) years prior to the filing of this Complaint. During their time being employed by Defendants, Plaintiffs were denied minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors."

4.     Plaintiffs worked at Defendants' principal place of business located at 68444 Perez Road, Cathedral City, California 92234.

5.     Defendants failed to pay Plaintiffs minimum wages and overtime wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA.

6.     Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half (1½) times their regular rate of pay. *See* 29 U.S.C. § 207(a).

7.     Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage

provision. *See* 29 U.S.C. § 206.

8.      Plaintiffs bring a collective action to recover the unpaid overtime compensation and minimum wage owed to them individually and on behalf of all other similarly situated employees, current and former, of Defendants in California. Members of the Collective Action are hereinafter referred to as "FLSA Collective Members."

9.      As a result of Defendants' violations, Plaintiffs and the FLSA Collective Members seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, interest, and attorneys' fees.

## II.    VENUE AND JURISDICTION

10.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.SC. §§ 201, *et seq.* Plaintiffs Silva, Bellamy, and Lloyd's state law claims for relief are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367(a).

11.      Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiffs worked in this District.

12.      Plaintiffs have satisfied all conditions precedent, if any, to the filing of this suit.

## III.    PARTIES

13.      Plaintiffs were employed by Defendants and qualify as "employees" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Their consents have previously been filed with the Court in the *Harris v. 68-444 Perez, Inc. dba Showgirls, et al.* as Dkts. 21-1, 28-1, 30-1, 46-1, 49-1, 55-1, 57-1, 57-2, 57-3, 57-4 and *Silva, et al. v. 68-444 Perez, Inc. dba Showgirls, et al.* as Dkts. 1-1, 1-2, and 1-3. Both matters have been consolidated in this action per the Court's June 30, 2021 Order. *See* Dkt. 84.

///

14.     The FLSA Collective Members are all current and former exotic dancers/entertainers who worked at Showgirls located at 68444 Perez Road, Cathedral City, California 92234 at any time starting four (4) years before this action was initiated, up to the present.

15.     Showgirls is a California Corporation with its principal place of business at 68444 Perez Road, Cathedral City, California 92234. At all times mentioned herein, Showgirls was an "employer" or "joint employer" of Plaintiffs as defined by the FLSA, 29 U.S.C. § 203(d) and (g). Showgirls may be served via its agent for service of process, Abdul Wahab Shawkat, at 68444 Perez Road, Cathedral City, California 92234.

16.     Mr. Shawkat was/is a main manager who executed the policies regarding payment to dancers/entertainers and management of dancers/entertainers, including Plaintiffs. Mr. Shawkat is also the owner of Showgirls and resides in Riverside County, California.

17.     Mr. Shawkat acted directly or indirectly on behalf of Showgirls, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. He exerted operational and management control over Showgirls, including day to day management. He was frequently present at, owned, directed, controlled and managed the operations at Showgirls. He also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Collective Members. Mr. Shawkat had at all times relevant to this lawsuit, the authority to hire and fire employees at Showgirls, the authority to direct and supervise the work of employees, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of Showgirls. In particular, he was responsible for determining whether Showgirls complied with the FLSA.

18.     Ms. Shawkat was/is a main manager who executed the policies regarding payment to dancers/entertainers and management of

dancers/entertainers, including Plaintiffs.

19.    Ms. Shawkat acted directly or indirectly on behalf of Showgirls, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. She exerted operational and management control over Showgirls, including day to day management. She was frequently present at, owned, directed, controlled and managed the operations at Showgirls. She also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Collective Members. Ms. Shawkat had at all times relevant to this lawsuit, the authority to hire and fire employees at Showgirls, the authority to direct and supervise the work of employees, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, she was responsible for the day-to-day affairs of Showgirls. In particular, she was responsible for determining whether Showgirls complied with the FLSA.

20.    At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their club engaged in commerce which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

21.    Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

22.    At all material times during the four (4) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at Showgirls as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 USC §§ 206-207.

23. The true names, capacities or involvement, whether individual, corporate, governmental or associate, of the Defendants named herein as DOE MANAGERS 1-3 and DOES 4-10, inclusive are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs pray for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such information and belief alleges thereon, that each of the Defendants designated herein as DOE is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiffs, as is hereinafter alleged.

24. Plaintiffs are informed and believe that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

25. Plaintiffs are informed and believe, and on that basis alleges that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employer and/or joint employers of Plaintiffs in that each of them exercised control over their wage payments and control over their duties.

26. Plaintiffs are informed and believe, and on that basis allege that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

27.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

## IV.     ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
### (AGAINST ALL DEFENDANTS)

### A.     FACTUAL ALLEGATIONS

28.     Defendants operate an adult-oriented entertainment facility located at 68444 Perez Road, Cathedral City, California 92234. At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs.

29.     At all times during the four (4) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

30.     At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

31.     Plaintiffs worked as dancers for Defendants in the prior four (4) years to the filing of this action. *See Harris v. 68-444 Perez, Inc. dba Showgirls, et al.* Dkts. 21-1, 28-1, 30-1, 46-1, 49-1, 55-1, 57-1, 57-2, 57-3, 57-4 and *Silva, et al. v. 68-444 Perez, Inc. dba Showgirls, et al.* Dkts. 1-1, 1-2, and 1-3.

32.     The primary duty of a dancer/entertainer is to dance and entertain customers, and give them a good experience. Specifically, a dancer/ entertainer performs stage and table dances, and entertains customers on an hourly basis.

33.     Stated differently, dancers/entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

34.     Plaintiffs worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiffs were an integral part of Defendants'

business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female dancers/ entertainers.

35.    Defendants did not pay dancers/ entertainers on an hourly basis.

36.    Defendants exercised significant control over Plaintiffs during their shifts and would demand that Plaintiffs comply with Defendants' scheduling preferences.

37.    Defendants set prices for all VIP performances.

38.    Defendants set the daily cover charge for customers to enter the facility and had complete control over which customers were allowed in the facility.

39.    Defendants controlled music for Plaintiffs' performances.

40.    Defendants controlled the means and manner in which Plaintiffs could perform.

41.    Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with their rules regarding dancing.

42.    Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

43.    Although Defendants allowed dancers/entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises. In order to comply with Showgirls' dress and appearance standards, Plaintiffs typically expended approximately a half-hour (1/2) hour of time each shift getting ready for work without being paid any wages for such time getting ready.

44.    Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their establishment.

45.    Defendants also required Plaintiffs to share their tips with Defendants and other non-service employees who do not customarily receive

tips, including the managers, disc jockeys, and the bouncers.

46.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers/entertainers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of their tips and instead required that they divide their tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

47.     Defendants exercised significant control over Plaintiffs through written and unwritten policies and procedures. Defendants had visibly posted in the employees' locker room the written employee rules for late arrivals and early leaves and the corresponding fees for which performers would be responsible.

48.     Defendants provided and paid for all advertising and marketing efforts undertaken on behalf of Showgirls.

49.     Defendants paid for the building used by Showgirls, maintenance of the facility, the sound system, stages, lights, beverage and inventory used at the facility.

50.     Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

51.     Defendants' opportunity for profit and loss far exceeded Plaintiffs' opportunity for profit and loss from work at Showgirls.

52.     Exotic dancing is an integral part of Showgirls' operations. Showgirls' advertising displays exotic dancing for its customers. Showgirls is

well known as a "strip club."

53.    Defendants need dancers/ entertainers to successfully and profitably operate the Showgirls business model.

54.    The position of dancer/entertainer requires no managerial skill of others.

55.    The position of dancer/entertainer requires little other skill or education, formal or otherwise.

56.    The only requirements to become an entertainer at Showgirls are "physical attributes" and the ability to dance seductively. Plaintiffs did not have a formal interview but instead were glanced over "up and down" and participated in a brief audition by the manager before being offered an employment opportunity. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. Defendants do not require the submission of an application or a resume as part of the hiring process. In fact, Plaintiffs have little or no formal dance training and experience before auditioning to dance at Showgirls.

57.    Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by dancers/entertainers.

58.    Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during an eight-plus (8+) hour work shift.

59.    Plaintiffs were not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and required to work and entertain its customers for longer than eight (8) hours per shift.

///

60.     Plaintiffs were not paid an hourly minimum wage for the typical half (1/2) hour of time expended prior to each shift to get ready for work, including applying makeup and hair, and to comply with Defendants' dress and appearance standards.

61.     Plaintiffs were not paid an hourly minimum wage for the time they were required to wait at Showgirls until the premises and the parking lot were cleared of customers.

62.     The FLSA Collective Members had the same pay structure and were under the same controls as Plaintiffs.

63.     Plaintiffs and FLSA Collective Members would work over forty (40) hours in some weeks each worked for Defendants.

64.     Defendants have never paid Plaintiffs and FLSA Collective Members any amount as wages whatsoever, and have instead unlawfully required Plaintiffs and FLSA Collective Members to pay them for the privilege of working.

65.     The only source of monies received by Plaintiffs (and the collective they seek to represent) relative to their employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiffs and the FLSA Collective Members were required to pay to Defendants.

66.     Although Plaintiffs and FLSA Collective Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half (1½) rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

67.     Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the

sole intent to avoid paying them in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

68.     Plaintiffs and the FLSA Collective Members who worked at Showgirls performed precisely the same job duties—dancing and entertaining at Showgirls.

69.     Plaintiffs and the FLSA Collective Members who worked at Showgirls during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

70.     Plaintiffs and the FLSA Collective Members at Showgirls were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

71.     Plaintiffs and the FLSA Collective Members at Showgirls during the applicable limitations period(s) were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

72.     Plaintiffs and the FLSA Collective Members at Showgirls, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

73.     As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainty that numerous other current and former dancers and entertainers who worked at Showgirls during the applicable limitations period would elect to participate in this action if provided notice of same.

74.     Upon information and belief, more than one hundred (100) dancers and entertainers have worked at Showgirls during the three (3) to five (5) years

prior to the filing of this action.

75.   Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons they seek to represent, and will adequately represent the interests of the class.

76.   Plaintiffs have hired counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the collective.

77.   Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other dancer/entertainer and failed to maintain and furnish wage statements to Plaintiffs.

78.   Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.   The time of day and day of week on which the employees' work week begins;

b.   The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c.   An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.   The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.   The hours worked each workday and total hours worked each workweek;

f.   The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.   The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.    The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.    The dates, amounts, and nature of the items which make up the total additions and deductions;

j.    The total wages paid each pay period; and

k.    The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

79.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Collective Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Collective Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of their unpaid work.

**B.    INDIVIDUAL LIABILITY UNDER THE FLSA**

80.    In *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009), the United States Court of Appeals for the Ninth Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer." *Id.* at 1088. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit stated that the definition of "employer" under FLSA is not limited by the common law concept of "employer" but "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."

81.    Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship,

that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999). The Ninth Circuit highlighted factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records.

82.     Mr. Shawkat is the owner of Showgirls and was responsible for the day-to-day affairs of Showgirls.

83.     Ms. Shawkat is the main manager at Showgirls and was also responsible for the day-to-day affairs of Showgirls.

84.     Mr. Shawkat and Ms. Shawkat implemented the policies and procedures applicable to exotic dancers at Showgirls, including those applicable to Plaintiffs.

85.     Mr. Shawkat and Ms. Shawkat had the authority to direct and supervise the work of employees. Mr. Shawkat and Ms. Shawkat had final say on the location, duration, and style in which Plaintiffs could perform as exotic dancers.

86.     Mr. Shawkat and Ms. Shawkat enforced a dress code at Showgirls.

87.     Ms. Shawkat would require dancers to change outfits if she did not like the clothing they wore.

88.     Mr. Shawkat and Ms. Shawkat had the authority to determine which dancers, including Plaintiffs, were allowed to work at Showgirls. Mr. Shawkat and Ms. Shawkat regularly made hiring and firing decisions at Showgirls.

89.     Ms. Shawkat tracked the number of dances Plaintiffs performed and retained a portion of the money Plaintiffs received from customers for dances.

90.     Ms. Shawkat was responsible for cashing out Plaintiffs at the end of their shifts to calculate their nightly earnings.

///

91.     Mr. Shawkat and Ms. Shawkat each implemented and enforced the house fee, dance fee, and stage fee policies at Showgirls, requiring Plaintiffs to pay Defendants in order to work at the club.

92.     Ms. Shawkat required Plaintiffs to tip her and other managers and employees at Showgirls the end of Plaintiffs' shifts.

93.     Mr. Shawkat and Ms. Shawkat each had the individual authority to discipline Plaintiffs, including the authority to suspend or fire Plaintiffs for any reason they wished.

94.     Mr. Shawkat and Ms. Shawkat each exercised the authority to determine which customers could enter the club and which could not.

95.     Mr. Shawkat and Ms. Shawkat had the individual authority to make decisions regarding employee compensation and capital expenditures.

96.     Mr. Shawkat and Ms. Shawkat each individually had the authority to pay Plaintiffs wages.

97.     Mr. Shawkat and Ms. Shawkat each individually refused to pay Plaintiffs wages.

98.     Mr. Shawkat purposefully misclassified Plaintiffs as independent contractors in order to avoid paying Plaintiffs wages.

99.     Ms. Shawkat purposefully misclassified Plaintiffs as independent contractors in order to avoid paying Plaintiffs wages.

100.   As owner and main manager respectively, Mr. Shawkat and Ms. Shawkat were each individually responsible for determining whether Showgirls complied with the FLSA.

101.   Despite being responsible for determining whether Showgirls complied with the FLSA, Mr. Shawkat and Ms. Shawkat each purposefully refused to comply with the dictates of the FLSA.

102.   Mr. Shawkat and Ms. Shawkat are individually liable for misclassifying Plaintiffs and failing to pay them their wages. The actual identities

of DOE MANAGERS 1-3 and DOES 4-10 are unknown at this time.

## V.   COLLECTIVE ACTION ALLEGATIONS

103.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

104.   Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers/entertainers at any time during the three (3) years prior to the commencement of this action to present.

105.   Plaintiffs have actual knowledge that the FLSA Collective Members have also been denied overtime pay for hours worked over forty (40) hours per workweek and have been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers at Showgirls. As such, they have firsthand personal knowledge of the same pay violations throughout Defendants' club. Furthermore, other exotic dancers/entertainers at Defendants' club Showgirls have shared with her similar pay violation experiences as those described in this Complaint.

106.   Other employees similarly situated to the Plaintiffs work or have worked at Showgirls but were not paid overtime at the rate of one and one-half (1½) their regular rate when those hours exceeded forty (40) hours per workweek. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

107.   Although Defendants permitted and/or required the FLSA Collective Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty (40). Defendants have also denied them full compensation at the federally mandated minimum wage rate.

///

108.   FLSA Collective Members perform or have performed the same or similar work as the Plaintiffs.

109.   FLSA Collective Members regularly work or have worked in excess of forty (40) hours during a workweek.

110.   FLSA Collective Members regularly work or have worked and did not receive minimum wage.

111.   FLSA Collective Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

112.   As such, FLSA Collective Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

113.   Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Collective Members.

114.   The experiences of the Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Collective Members.

115.   The specific job titles or precise job responsibilities of each FLSA Collective Members does not prevent collective treatment.

116.   All FLSA Collective Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

117.   All FLSA Collective Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

118.   Although the exact number of damages may vary among FLSA Collective Members, the damages for the FLSA Collective Members can be easily calculated by a simple formula. The claims of all FLSA Collective

Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendant that caused harm to all FLSA Collective Members.

119. As such, Plaintiffs bring their FLSA claims as a collective action on behalf of the following collective:

> **All of Defendants' current and former exotic dancers/entertainers who worked at the Showgirls club located in Cathedral City, California at any time starting three (3) years before the initial Complaint was filed.**

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**FAILURE TO PAY MINIMUM WAGE PURSUANT TO THE FLSA, 29 U.S.C. § 206**

**(By All Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

120. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

121. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

122. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

123. Defendants failed to pay Plaintiffs the minimum wage in violation of 29 U.S.C. § 206.

124. Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the

minimum wage under the FLSA.

125.   Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after they learned that their misclassification scheme and compensation policies were illegal.

126.   Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES PURSUANT TO THE FLSA, 29 U.S.C. § 207
### (By All Plaintiffs Individually and on Behalf of the Collective
### Against All Defendants)

127.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

128.   Each Defendant is an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

129.   Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

130.   Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000.00).

131.   Defendants failed to pay Plaintiffs the applicable overtime wage for each hour in excess of forty (40) during each workweek in which she worked in violation of 29 U.S.C. § 207.

132.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the overtime wage required under the FLSA.

133.    Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after they learned that their misclassification scheme and compensation policies were unlawful.

134.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION

**UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203**
**(By All Plaintiffs Individually and on Behalf of the Collective**
**Against All Defendants)**

135.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

136.    Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore are tipped employees as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

137.    At all relevant times, each Defendant is an "employer" or joint employer of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

138.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

139.    Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged

in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

140.   Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

141.   Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, disc jockeys, and bouncers in violation of TIPA.

142.   Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the Club DJs, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

143.   The contribution the Defendants required Plaintiffs to make after each shift was arbitrary and capricious and the distribution was not agreed to by Plaintiffs or the other dancers; but rather, was imposed upon Plaintiffs and the other dancers.

144.   By requiring Plaintiffs to pool their tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiff in violation of the FLSA.

145.   Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

146.   At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of

Kristensen LLP
ATTORNEYS FOR PLAINTIFFS

this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which they were entitled.

147.   Defendants' willful failure and refusal to pay Plaintiffs the tips they earned violates the FLSA.

148.   Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, disc jockeys, and bouncers in violation of TIPA.

149.   As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

## FOURTH CAUSE OF ACTION

### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35

### (By All Plaintiffs Individually and on Behalf of the Collective Against All Defendants)

150.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

151.   Defendants required Plaintiffs to pay monetary fees to Defendants and other Showgirls employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

152.   Defendants' requirement that Plaintiffs pay fees to Defendants and other Showgirls employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

153.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

154.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35, all monetary fees imposed on Plaintiff are classified as illegal kickbacks.

155.   Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay in order to work at Showgirls, involving but not limited to house fees.

### FIFTH CAUSE OF ACTION

#### FORCED TIPPING, 29 C.F.R. § 531.35

**(By All Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

156.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

157.   Defendants required Plaintiffs to pay monetary fees to other Showgirls employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

158.   Defendants' requirement that Plaintiffs pay fees to other Showgirls employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

159.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

160.   Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay other employees in order to work at Showgirls, involving but not limited to forced tip sharing.

///

///

///

### SIXTH CAUSE OF ACTION

**FAILURE TO PAY MINIMUM WAGE UNDER CAL. *LAB. CODE* §§ 1194 & 1197**

**(By Plaintiffs Silva, Bellamy, and Lloyd Against All Defendants)**

161.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

162.   Plaintiffs allege, on the basis of information and belief, that Defendants, from the time the applicable statute of limitations begins to the present time, have engaged in the regular practice of requiring or permitting Plaintiffs to work without paying them the legal minimum wage at all times.

163.   Section 2(K) of IWC Wage Order 5 and section 5(H) of IWC Wage Order 10 define "hours worked" as "the time during which an employee is subject to the control of the employer, [which] includes all the time the employee is suffered or permitted to work, whether or not required to do so." An employer must pay its employees for all "hours worked."

164.   Defendants did not pay wages for *any* of the time that they controlled Plaintiffs and/or permitted them to work.

165.   Plaintiffs are not exempt from the minimum wage requirements under California law.

166.   Defendants failed to accurately pay Plaintiffs the required legal minimum wage and compensation for all hours worked, in violation of Cal. *Lab. Code* §§ 204, 210, 216, 558, 1194, 1194.12, 1197 and applicable IWC Wage Order(s).

167.   Defendants, and each of them, individually or by and through their respective officers, directors and managing agents, ordered, authorized, approved or ratified the conduct herein alleged with the intent to deprive Plaintiffs of compensation and benefits to which they are, and were, entitled under California law, so as to increase Defendants' profits at the expense of the health and welfare of their employees, contrary to public policy and clear statutory obligations.

168.   As a result of the actions of Defendants in failing and refusing to pay the minimum wages required by law, plaintiffs Silva, Bellamy, and Lloyd were damaged by not receiving compensation which they should have received, but did not receive. Plaintiffs Silva, Bellamy, and Lloyd are therefore entitled to compensation in an amount to be proven at trial for unpaid wages, pre-judgment interest, penalties, attorneys' fees and costs pursuant to Cal. *Lab. Code* § 1194 and other applicable statutes.

### SEVENTH CAUSE OF ACTION

**FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF**

**CAL.** ***LAB. CODE*** **§§ 510, 1194, & 1197**

**(By Plaintiffs Silva, Bellamy, and Lloyd Against All Defendants)**

169.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

170.   At all relevant times, Plaintiffs have been a non-exempt employee of Defendants and is entitled to the full protections of the California *Labor Code* and of the applicable IWC Wage Order(s).

171.   Cal. *Lab. Code* § 1198 makes it unlawful for an employer to employ any person under conditions of employment that violate the Wage Order.

172.   Section 2(K) of IWC Wage Order 5 and section 2(H) of IWC Wage Order 10 define "hours worked" as "the time during which an employee is subject to the control of the employer, [which] includes all the time the employee is suffered or permitted to work, whether or not required to do so." An employer must pay its employees for all "hours worked."

173.   Cal. *Lab. Code* §§ 510 and 1194, and Section 3 of the Wage Orders, require employers to pay overtime wages to their non-exempt employees at no less than one and one-half (1 ½) times their regular rates of pay for all hours worked in excess of eight (8) hours in one workday, all hours worked in excess of

forty (40) hours in one workweek, and for the first eight (8) hours worked on a seventh consecutive workday.

174.   Cal. *Lab. Code* §§ 510 and 1194, and Section 3 of the Wage Orders, also require employers to pay overtime wages to their non-exempt employees at no less than two (2) times their regular rates of pay for all hours worked in excess of twelve (12) hours in one workday, and for all hours worked in excess of eight (8) hours on a seventh consecutive workday.

175.   At relevant times during their employment, Defendants failed to pay Plaintiffs overtime wages for overtime hours worked.

176.   Pursuant to Cal. *Lab. Code* § 1194, Plaintiffs Silva, Bellamy, and Lloyd seek recovery of all unpaid overtime wages, interest thereon, costs of suit, and reasonable attorneys' fees, all in amounts subject to proof.

### EIGHTH CAUSE OF ACTION

**FAILURE TO FURNISH ACCURATE WAGE STATEMENTS,**

**CAL. *LAB. CODE* §§ 226, *ET. SEQ.***

**(By Plaintiffs Silva, Bellamy, and Lloyd Against All Defendants)**

177.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

178.   Cal. *Lab Code* § 226(a) mandates that "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an **accurate** itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any

applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment." (Emphasis added.)

179.   Pursuant to Cal. *Lab. Code* § 226(e)(2)(B), "an employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items" identified above.

180.   As alleged in Plaintiffs' causes of action, Defendants, and each of them, regularly failed to compensate Plaintiffs for all of her overtime hours worked, as well as for her missed meal and rest breaks.

181.   Furthermore, Defendants did not regularly furnish wage statements that identified the inclusive dates for that wage statement, in violation of Cal. *Lab. Code* §§ 226, *et seq.*

182.   Pursuant to Cal. *Lab. Code* § 226, Plaintiffs Silva, Bellamy, and Lloyd seek damages, costs of suit, and reasonable attorneys' fees in an amount to be proven at the time of trial.

## NINTH CAUSE OF ACTION

**CONSOLIDATED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**
**– 29 –**

1

2

**WAITING TIME PENALTIES, CAL. *LAB. CODE* §§ 201-203**

**(By Plaintiffs Silva, Bellamy, and Lloyd Against All Defendants)**

3

4

5

183.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

6

7

8

184.   At all times relevant herein, Defendants were required to pay their employees all wages owed in a timely fashion during and at the end of their employment, pursuant to Cal. *Lab. Code* §§ 201–203.

9

10

11

185.   As a pattern and practice, Defendants regularly failed to pay Plaintiffs their final wages pursuant to Cal. *Lab. Code* §§ 201–203, and accordingly owe waiting time penalties pursuant to Cal. *Lab. Code* § 203.

12

13

14

186.   The conduct of Defendants and their agents and managerial employees as described herein was willful, and in violation of the rights of Plaintiffs.

15

16

17

18

19

187.   Plaintiffs are informed and believe, and on that basis allege, that Defendants' willful failure to pay wages due and owed to them upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due. Therefore, Plaintiffs Silva, Bellamy, and Lloyd are entitled to compensation pursuant to Cal. *Lab. Code* § 203.

20

**<u>TENTH CAUSE OF ACTION</u>**

21

22

**FAILURE TO INDEMNIFY BUSINESS EXPENSES IN VIOLATION OF**

**CAL. *LAB. CODE* § 2802**

23

**(By Plaintiffs Silva, Bellamy, and Lloyd Against All Defendants)**

24

25

26

188.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

27

28

189.   Cal. *Lab. Code* § 2802 requires employers, including Defendants, to indemnify employees for all necessary expenditures incurred by the employee in performing her job.

190.   As alleged herein, Defendants required Plaintiffs, as a condition of their employment, pay a daily "house fee" and/or "stage fee" of at least forty U.S. Dollars ($40) in order to fulfill Plaintiffs' job duties.

191.   As alleged herein, Defendants required Plaintiffs, as a condition of their employment, to pay "late fees" and "leave early fees" and any balances from previous shifts in order to fulfill Plaintiffs' job duties.

192.   As a direct and proximate result of Defendants' failure to reimburse Plaintiffs for these necessary expenditures, Plaintiffs have been injured in an amount to be proved at trial.

193.   Plaintiffs Silva, Bellamy, and Lloyd are, therefore, entitled to recover reimbursement for these necessary expenditures, and also to recover costs, interest, and attorneys' fees as provided by California law.

## ELEVENTH CAUSE OF ACTION

### COMPULSION AND COERCION TO PATRONIZE EMPLOYER AND/OR OTHER PERSONS IN VIOLATION OF CAL. *LAB. CODE* § 450

### (By Plaintiffs Silva, Bellamy, and Lloyd Against All Defendants)

194.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

195.   Cal. *Lab. Code* § 450 provides that no employer "may compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of anything of value."

196.   As alleged herein, Defendants required Plaintiffs to purchase fees such as the "house fee" from Defendants and/or other specific persons.

///

197.   As a direct and proximate result of Defendants' requirement that Plaintiffs purchase anything of value, including the "house fee", Plaintiffs have been injured in an amount to be proved at trial.

198.   By requiring Plaintiffs to purchase said fees to do their job, Defendants compelled and coerced Plaintiffs to patronize Showgirls.

199.   Plaintiffs Silva, Bellamy, and Lloyd are, therefore, entitled to recover damages, and also to recover costs, interest, and attorney's fees as provided by California law.

## TWELFTH CAUSE OF ACTION

### UNFAIR COMPETITION IN VIOLATION OF

### CAL. *BUS. & PROF. CODE* §§ 17200, *ET SEQ.*

**(By Plaintiffs Silva, Bellamy, and Lloyd Against All Defendants)**

200.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

201.   Cal. *Bus. & Prof. Code* § 17200 defines "unfair competition" to include any unlawful business practice.

202.   Cal. *Bus. & Prof. Code* §17204 allows a person who has lost money or property as a result of unfair competition to bring an action for restitution of money or property acquired from him or her by means of unfair competition.

203.   The FLSA prohibits employers to divert any part of an employee's wages and overtime wages, including tips and gratuity, to itself.

204.   In violation of these requirements, as set forth above, Defendants violated 29 U.S.C. § 203 by forcing Plaintiffs and the FLSA Collective Members to participate in an invalid tip-pool with employees who typically do not receive tips. Additionally, Defendants forced Plaintiffs to use portions of their tip wages to pay Defendant managers as well as "house fees" and other fees and fines.

205.   In violation of these requirements, as set forth above, Defendants violated 29 U.S.C. § 206 and 29 U.S.C. § 207 by failing to pay Plaintiffs and the FLSA Collective Members minimum wages and overtime wages.

206.   As a result of Defendants' above-alleged unlawful business practices, Plaintiffs and the FLSA Collective Members have lost monies and property by means of unfair competition.

207.   In violation of these requirements, as set forth above, Defendants compelled Plaintiffs to patronize Showgirls.

208.   In violation of these requirements, as set forth above, Defendants failed to pay Plaintiffs overtime wages for hours that they worked.

209.   In violation of these requirements, as set forth above, Defendants failed to pay Plaintiffs minimum wages for the hours that they worked.

210.   In violation of these requirements, as set forth above, Defendants failed to indemnify business expenses to Plaintiffs.

211.   As a result of Defendants' above-alleged unlawful business practices, Plaintiffs have lost monies and property by means of unfair competition.

212.   Pursuant to Cal. *Bus. & Prof. Code* § 17204, Plaintiffs Silva, Bellamy, and Lloyd seek an order of restitution for all monies and property that Defendants have acquired from them by means of unfair competition from the forced tip pooling.

213.   Plaintiffs Silva, Bellamy, and Lloyd are seeking minimum wages, overtime wages, forced tips and other restitutionary relief under this equitable cause of action for the four years prior to filing this lawsuit.

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs each request of this Court the following relief:

1.   For compensatory damages according to proof at trial of at least $100,000 for jurisdictional purposes;

2.   For special damages according to proof at trial;

3.   For restitution of unpaid monies;

4.   For attorneys' fees;

5.   For costs of suit incurred herein;

6.   For statutory penalties;

7.   For civil penalties;

8.   For pre-judgment interest;

9.   For post-judgement interest;

10.  For general damages in an amount to be proven at trial;

11.  For declaratory relief;

12.  For injunctive relief; and

13.  For such other and further relief as the Court may deem just and proper.

Dated: September 7, 2021

**KRISTENSEN LLP & ELLZEY & ASSOCIATES, PLLC**

*/s/ John P. Kristensen*

John P. Kristensen
Jesenia A. Martinez
Alejandro Marin
Jarrett L. Ellzey
Leigh S. Montgomery
Ghazzaleh Rezazadeh

***Attorneys for Plaintiffs***

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all such triable claims.

Dated: September 7, 2021

**KRISTENSEN LLP &
ELLZEY & ASSOCIATES, PLLC**

*/s/ John P. Kristensen*

John P. Kristensen
Jesenia A. Martinez
Alejandro Marin
Jarrett L. Ellzey
Leigh S. Montgomery
Ghazzaleh Rezazadeh

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I certify that on Tuesday, September 07, 2021 a true and correct copy of the attached **CONSOLIDATED COMPLAINT FOR DAMAGES** was served via CM/ECF upon all participants of record, including the following parties listed below, pursuant to Fed. R. Civ. P. 5:

Steven J. Shapero
**SHAPERO & SHAPERO**
5950 Canoga Avenue, Suite 404
Woodland Hills, California 91367
Email:sshapero@shaperoandshapero.com

*Co-Counsel for Defendants*

Devon M. Lyon
**LYON LEGAL, P.C.**
2698 Junipero Avenue, Suite 201A
Signal Hill, California 90755
Email: d.lyon@lyon-legal.com

*Co-Counsel for Defendants*

Andrea L. Cook
Rina Stinson
**ANDREA COOK & ASSOCIATES**
555 East Ocean Boulevard, Suite 430
Long Beach, California 90802
Email: alcook@alcooklaw.com
Email: rstinson@alcooklaw.com
Email: amina@alcooklaw.com

*Co-Counsel for Defendants*

*/s/ John P. Kristensen*
John P. Kristensen