John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
Telephone: 310-273-1230
Facsimile: 310-858-1063
*kristensen@cz.law*
*jmartinez@cz.law*

Jarrett L. Ellzey (*Pro Hac Vice*)
Leigh S. Montgomery (*Pro Hac Vice*)
Ghazzaleh Rezazadeh (*Pro Hac Vice*)
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77006
*jarrett@ellzeylaw.com*
*leigh@ellzeylaw.com*
*ghazzaleh@ellzeylaw.com*

**Attorneys for Plaintiffs**

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| REBECCA ANSPACH, *et al.*,<br><br>            Plaintiff,<br>    vs.<br><br>68-444 PEREZ, INC.  dba SHOWGIRLS, a California Corporation; ABDUL WAHAB SHAWKAT, an individual; SAHAR SHAWKAT, an individual; DOE MANAGERS 1-3; and DOES 4-10, inclusive,<br><br>            Defendants. | Case No.: 5:19-cv-02184-JGB-SP<br><br>**COLLECTIVE ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF FLSA SETTLEMENT**<br><br>**Hearing:**<br>Date:    March 14, 2022<br>Time:    9:00 a.m.<br>Crtrm:  1 |

---

**CARPENTER & ZUCKERMAN**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, March 14, 2022 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, located at 3470 Twelfth Street, Riverside, California 92501 that plaintiffs Rebecca Anspach, Antonia Crane, Marissa Duran, Akilah Hammond, Kimberly Ann Hoyer, Mandy Johnson, Alexandra Mantikas, Shanon Nuckols, Vanessa Ruiz, Andjela Suka, Neli Velazquez, Marlene Silva, Mikayla Bellamy, and Chellsee Lloyd (collectively, "Plaintiffs"), by and through undersigned counsel, hereby request approval of the settlement agreements (the "Agreements") reached between Plaintiffs and defendants 68-444 Perez, Inc. dba Showgirls, Abdul Wahab Shawkat, and Sahar Shawkat  (collectively, "Defendants") (Plaintiffs and Defendants will be referred to collectively as the "Parties").

The Agreements are attached as exhibits to the Declaration of John P. Kristensen filed concurrently with this Motion. *See* Declaration of John P. Kristensen ¶ 26, Exhibits ("Exs.") 1-15. Plaintiffs submit that the Court should approve the Settlement for the reasons described in the Memorandum of Points and Authorities. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place prior to filing this motion.

Dated:  February 14, 2022        Respectfully submitted,

By:  */s/ John P. Kristensen*
John P. Kristensen (SBN 224132)
*kristensen@cz.law*
Jesenia A. Martinez (SBN 316969)
*jmartinez@cz.law*
**CARPENTER & ZUCKERMAN**
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.      INTRODUCTION AND PROCEDURAL HISTORY ................................... 1

II.     FACTUAL BACKGROUND ................................................. 3

III.    LEGAL GROUNDS FOR PLAINTIFFS' CLAIMS ................................. 3

IV.     THE SETTLEMENT AGREEMENTS .......................................... 4

V.      STANDARD FOR APPROVAL OF FLSA SETTLEMENTS ...................... 5

VI.     APPROVAL OF THE FLSA SETTLEMENTS ................................. 7

        A.      Bona Fide Dispute .......................................... 7

        B.      Fair and Reasonable Resolution .............................. 8

                1.      Plaintiffs' Possible Range of Recovery .......................... 9

                2.      The Stage of Proceedings and Amount of Discovery
                        Completed ................................................ 11

                3.      Seriousness of Litigation Risks Faced by the Parties .. 12

                4.      Scope of Any Release Provision in the Agreements .... 12

                5.      Experience and Views of Counsel and Opinion of
                        Participating Plaintiffs ...................................... 13

                6.      Possibility of Fraud or Collusion ................................. 14

VII.    THE ATTORNEYS' FEES AND COSTS REQUEST IS REASONABLE .... 15

        A.      FLSA Collective Action Settlements Allow for a Greater
                Recovery of Attorneys' Fees Than Rule 23 Class Action
                Settlements ................................................. 15

        B.      Plaintiffs' Attorneys' Fees Totaling 45% of the Settlement Is
                a Reduction of the Lodestar and Would Therefore Be a
                Reasonable Award ......................................... 17

VIII.   CONCLUSION ......................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Ambrosino v. Home Depot. U.S.A., Inc*.,
  No. 11-CV-1319-MDD, 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014)....13

*Bonnette v. California Health & Welfare*,
  704 F.2d 1465 (9th Cir.1983)......................................................................16

*Byrne v. Santa Barbara Hospitality Services, Inc.*,
  C.A. No. 17-00527, Dkt. 178 (C.D. Cal. Dec. 14, 2018)..........................19

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015)......................................................................11

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)...................................................................13

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977)......................................................................7

*Doe 1-2 v. Deja Vu Servs., Inc.*,
  2017 WL 2629101 (E.D. Mich. June 19, 2017).........................................19

*Earls v. Forga Contracting, Inc.*,
  No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921
  (W.D.N.C. June 9, 2020)............................................................................16

*Fegley v. Higgins*,
  19 F.3d 1126 (6th Cir. 1994).....................................................................16

*Fisher v. SD Prot. Inc.*,
  948 F.3d 593 (2d Cir. 2020)......................................................................16

*Garcia v. Jambox, Inc.*,
  No. 14-CV-3504-MHD, 2015 WL 2359502 (S.D.N.Y. Apr. 27, 2015)....13

*Gary v. Carbon Cycle Arizona LLC*,
  398 F. Supp. 3d 468, 485 (D. Ariz. 2019).................................................17

CZ | CARPENTER & ZUCKERMAN

*Gay Officers Action League v. Puerto Rico*,
   247 F.3d 288 (1st Cir.2001) ....................................................... 17

*Glass v. UBS Financial Services, Inc*., No. 06-CV-4068-MMC, 2007 WL 221862
   (N.D. Cal. Jan. 26, 2007)............................................................. 9

*Gonzalez v. Fallanghina, LLC*, No. 16-cv-01832-MEJ, 2017 WL 1374582 (N.D.
   Cal. Apr. 17, 2017)...................................................................... 7

*Greer v. Pac. Gas & Elec. Co*., No. 15-CV-1066-EPG, 2018 WL 2059802 (E.D.
   Cal. May 3, 2018)........................................................................ 9

*Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713
   (S.D.N.Y. Sept. 22, 2015) ........................................................ 18

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) 17

*In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935 (9th Cir. 2011) ......... 14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d
   768 (3rd Cir. 1995)...................................................................... 7

*In re TJX Companies Retail Sec. Breach Litig.*, 584 F.Supp.2d 395, 408 (D.Mass.
   2008)......................................................................................... 15

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F.Supp.2d 249, 271 (D.N.H. 2007) 15

*In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 524
   (E.D.N.Y. 2003) ......................................................................... 15

*Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057
   (N.D. Cal. Oct. 3, 2018) ....................................................... 7, 9, 11, 12

*Johnson v. MetLife, Inc*., No. SACV 13-128-JLS, 2014 WL 12773568 (C.D. Cal.
   Nov. 6, 2014)............................................................................... 9

*Kazanjian v. MSM Enterprises, Inc.*, No. CIV. 93-227-P-C, 1995 WL 140153, at
   *3 (D.Me. Mar. 15, 1995) .......................................................... 16

*King v. My Online Neighborhood*, No. 6:06-cv-435-ORL-22JGG, 2007 WL
   737575 (M.D. Fla. March 7, 2007) ............................................. 7

*Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ...................................................................................13

*Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527 (11th Cir. 1994)7

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ......................12

*Lucio–Cantu v. Vela*, 239 Fed. App'x. 866 (5th Cir.2007)..................................16

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)..5, 6, 8

*Macklin v. Biscayne Holding Corp et al*, 1:19-cv-00561-WES-PAS (D.R.I. 2019) ...................................................................................................................18

*Madrid v. teleNetwork Partners, LTD.*, No. 5:17-cv-04519-BLF, 2019 WL 3302812 (N.D. Cal. July 23, 2019) ...............................................................7

*Marrotta v. Suffolk Cty.*, 726 F.Supp.2d 1, 25 (D.Mass. 2010) ....................17, 18

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-CV-5243-SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) ...........................................................12

*Mills v. Cabral*, No. CIV.A. 06-10133-RGS, 2010 WL 2553889, at *1 (D.Mass. June 18, 2010) ...................................................................................17

*Ortega v. The Spearmint Rhino Companies Worldwide Inc., et al.,* 5:17-cv-00206-JGB-KK (C.D. Cal. July 5, 2021) ...........................................................19

*Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630 (N.D. Cal. Apr. 15, 2014).........................................................................................6

*Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015).........................................................................................6

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006)..........13

*Rodriguez v. Nationwide Mutual Ins.Co., et al.*, No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796 (C.D. Cal. Nov. 16, 2017).............................................6

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 2494569, at *3 (N.D. Cal. May 14, 2020) ...................................................................................19

*Saleh v. Valbin Corp.*, No. 17-CV-0593-LHK, 2018 WL 6002320 (N.D. Cal. Nov. 15, 2018)................................................................................8

*SKF USA Inc. v. Bjerkness*, Nos. 08 C 4709, 09 C 2232, 2011 WL 4501395 (N.D. Ill. 2011) ...............................................................................16

*Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017)........................................................12, 13, 14

*Soler v. G & U, Inc.*, 658 F.Supp. 1093 (S.D.N.Y. 1987)....................................11

*Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249 (D. Nev. 2014) ..............15

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985).................11

*Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094 (PAE), 2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) ...........................................................11

**Statutes**

29 U.S.C. § 203..........................................................................................1, 2, 4

29 U.S.C. § 206.............................................................................................1, 2

29 U.S.C. § 207.............................................................................................1, 2

29 U.S.C. § 216(b)................................................................................2, 6, 8, 12

Cal. *Bus. & Prof. Code*  §§ 17200, *et seq.*..............................................................2

Cal. *Lab. Code* § 201 .............................................................................................2

Cal. *Lab. Code* § 203 .............................................................................................2

Cal. *Lab. Code* § 226 .............................................................................................2

Cal. *Lab. Code* § 450 .............................................................................................2

Cal. *Lab. Code* § 510 .............................................................................................2

Cal. *Lab. Code* § 1194 ...........................................................................................2

Cal. *Lab. Code* § 1197 ............................................................................................2

Cal. *Lab. Code* § 2802 ............................................................................................2

**Rules**

Fed. R. Civ. P. 23.........................................................................................3, 15, 18

**CZ | CARPENTER & ZUCKERMAN**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs Rebecca Anspach ("Anspach"), Antonia Crane ("Crane"), Marissa Duran ("Duran"), Akilah Hammond ("Hammond"), Kimberly Ann Hoyer ("Hoyer"), Mandy Johnson ("Johnson"), Alexandra Mantikas ("Mantikas"), Shanon Nuckols ("Nuckols"), Vanessa Ruiz ("Ruiz"), Andjela Suka ("Suka"), Neli Velazquez ("Velazquez"), Marlene Silva ("Silva"), Mikayla Bellamy ("Bellamy"), and Chellsee Lloyd ("Lloyd") (collectively, "Plaintiffs") worked as exotic dancers at defendants 68-444 Perez, Inc. dba Showgirls, Abdul Wahab Shawkat, and Sahar Shawkat's club, Showgirls.

Plaintiff Katrina Harris[1] the Complaint on November 13, 2019 as a collective action with the following causes of action: (1) Failure to Pay Minimum Wage, 29 U.S.C. § 206; (2) Failure to Pay Overtime Wages, 29 U.S.C § 207; (3) Unlawful Taking of Tips, 29 U.S.C. § 203; and (4) Conversion, Cal. Civ. Code § 3336.[2] The causes of action were based on the misclassification of putative collective members as independent contractors.

On April 23, 2020, the Court issued an order conditionally certifying this collective action and ordering notice be provided to putative collective members. Dkt. 41.

Prior to the issuance of notice, and afterwards, multiple plaintiffs filed their consent to join. The current plaintiffs filed their consents to join on the following dates: Mantikas (January 16, 2020 – Dkt. 16); Suka (January 22, 2020 – Dkt. 21); Crane (February 25, 2020 – Dkt. 27); Duran (February 27, 2020 – Dkt. 28); Nuckols (March 3, 2020 – Dkt. 30); Johnson (June 17, 2020 – Dkt. 49); Hoyer

---

[1] Plaintiff Katrina Harris accepted an Offer of Judgment on September 17, 2021. Dkt. 103. Judgment was entered in Ms. Harris' favor on December 13, 2021. Dkt. 124.

[2] Ms. Harris' Fourh Cause of Action for Conversion was asserted only by Ms.Harris individually, not on behalf of the collective.

1    (July 20, 2020 – Dkt. 55); Hammond (August 6, 2020 – Dkt. 57); Ruiz (August

2    6, 2020 – Dkt. 57); Velazquez (August 6, 2020 – Dkt. 57); Anspach (August 6,

3    2020 – Dkt. 57).

4        On March 4, 2021, Silva, Bellamy, and Lloyd filed their Complaint against

5    Defendants asserting the following causes of action: (1) Failure to Pay Minimum

6    Wage, 29 U.S.C. § 206; (2) Failure to Pay Overtime Wages, 29 U.S.C § 207; (3)

7    Unlawful Taking of Tips, 29 U.S.C. § 203; (4) Illegal Kickbacks, 29 C.F.R. §

8    531.35; (5) Forced Tip Sharing, 29 C.F.R. § 531.35; (6) Failure to Pay Minimum

9    Wage in Violation of Cal. *Lab. Code* §§ 1194 &1197; (7) Failure to Pay

10   Overtime Wages in Violation of Cal. *Lab. Code* §§ 510, 1194 & 1197; (8) Failure

11   to Furnish Accurate Wage Statements, Cal. *Lab. Code* § 226; (9) Waiting Time

12   Penalties, Cal. *Lab. Code* §§ 201-203; (10) Failure to Indemnify Business

13   Expenses in Violation of Cal. *Lab. Code* § 2802; (11) Compelled Patronization of

14   Employer and/or Other Persons in Violation of Cal. *Lab. Code* § 450; and (12)

15   Unfair Competition in Violation of Cal. *Bus. & Prof. Code*  §§ 17200, *et seq.*

16   *Silva* Dkt. 1.

17       On June 30, 2021, the Court consolidated the *Harris* and *Silva* matters.

18   Dkt. 84.

19       On September 7, 2021, a Consolidated Complaint was filed. Dkt. 98.

20       As this Court was aware, the Parties actively engaged in litigation, there

21   was a motion for notice pursuant to 29 U.S.C. § 216(b), petitions to compel

22   arbitration, a tentative settlement that fell apart, and litigation for over two years.

23   After attending a full day mediation with Natasha Chesler on November 30,

24   2021, the Parties reached the resolution as described in the Agreements for which

25   they are now seeking approval.[3] *See* Declaration of John P. Kristensen

26

27   [3]   On July 26, 2021, Mantikas settled her claims against Defendants. On October
28        12, 2021, Crane settled her claims against Defendants. Both the Mantikas and
          Crane settlements are included as part of this Motion.

("Kristensen Decl.") ¶ 26, Exs. 1-15.

Pursuant to the Agreements, Plaintiffs will receive $587,340.81, with the remaining $552,659.19 being allocated to Plaintiffs' attorneys' fees ($513,000) and costs ($39,659.19). *See* Kristensen Decl. ¶¶ 26, 29, Exs. 1-19. This amount reflects a favorable outcome for Plaintiffs, far in excess of what would be expected in a similar Fed. R. Civ. P. 23 class action settlement. Furthermore, the fee request is less than Plaintiffs' counsel's lodestar, virtually identical to other approved Fair Labor Standards Act ("FLSA") settlements, and therefore reasonable.

As of the time of drafting this Motion, Defendants have not returned their signature pages for the Settlement Agreements for Anspach, Duran, Hammond, Hoyer, Johnson, Nuckols, Ruiz, Suka, Velazquez, Silva, Bellamy, and Lloyd detailing the allocations to each. At the November 30, 2021 mediation, however, Defendants signed a Settlement Agreement noting the global terms. The November 30, 2021 is enforceable. Defendants cannot be permitted to back out of yet another settlement. If the Court is not inclined to grant settlement approval. Plaintiffs respectfully request that their Motion for Partial Summary Judgment be heard as soon as practicable and this matter be reset for trial.

## II.   FACTUAL BACKGROUND

Plaintiffs were exotic dancers at Showgirls within the three years prior to the filing of the lawsuit or the date they opted in as Plaintiffs. Plaintiffs alleged they were misclassified as independent contractors and were not paid wages.

## III.   LEGAL GROUNDS FOR PLAINTIFFS' CLAIMS

Plaintiffs differentiated the types of FLSA and California Labor Code claims for the dancers. The first two types of claims were for failure to pay minimum wage or overtime.

For the third type of claim, Plaintiffs contended that Defendants required them to pay unlawful "house fees" to work at Showgirls, as well as required them

CZ | CARPENTER & ZUCKERMAN

CZ | CARPENTER & ZUCKERMAN

1  to "tip-out" to Showgirls' employees. Plaintiffs argued that this forced
2  subsidization of Defendants' club constituted unlawful "kickbacks" in violation
3  of 29 U.S.C. § 203.

4  Lastly, Plaintiffs also had claims for two types of tipping violations. First,
5  the dancers were "encouraged" to tip the club's employees. The forced tipping,
6  Plaintiffs contend, is also a violation of 29 C.F.R. § 531.35, as it results in the
7  dancers subsidizing the clubs' payment of wages to other employees. The second
8  form of claimed damages for tips was the price of individual private dances to
9  customers which was retained by Defendants rather than being paid to Plaintiffs.
10  Defendants maintain these fees were fees charged by them and belonging to
11  them. Plaintiffs allege these were tips that belonged to them and were improperly
12  taken.

13  Thus, when Plaintiffs resolved this matter, there were five levels of
14  claimed FLSA damages for each dancer that went into the valuation of the
15  claims, along with California Labor Code violations. There was also substantial
16  debate between the Parties regarding the number of shifts and dates each dancer
17  worked.

18  **IV.   THE SETTLEMENT AGREEMENTS**

19  Pursuant to the Agreements, Defendants have agreed to pay Plaintiffs a
20  gross settlement of $1,140,000.

| PLAINTIFF | GROSS SETTLEMENT AMOUNT |
|---|---|
| Anspach | $125,000 |
| Bellamy | $65,000 |
| Crane | $25,000 |
| Duran | $125,000 |
| Hammond | $75,000 |
| Hoyer | $80,000 |

| Johnson | $125,000 |
|---------|----------|
| Lloyd | $75,000 |
| Mantikas | $15,000 |
| Nuckols | $125,000 |
| Ruiz | $90,000 |
| Silva | $90,000 |
| Suka | $35,000 |
| Velazquez | $90,000 |
| **TOTAL** | $1,140,000.00 |

*See* Kristensen Decl. ¶ 26, Exs. 1-15.

In addition, as part of the settlement, Defendants agreed to pay $50,000 for plaintiff Katrina Harris' attorneys' fees and costs to satisfy the Judgment of $25,000, plus Ms. Harris' costs and attorneys' fees.

///

Plaintiffs' counsel litigated this case extensively. The settlement amounts are significant amounts and take into account the amount of time litigated and the ability to reach resolution and collect, which is relevant in this current unknown economic environment. In exchange for the consideration described above, Plaintiffs have agreed to dismiss their causes of action for alleged violations of the FLSA and any state wage and hour claims stemming from Plaintiffs' employment with the Defendants at issue in the Complaint. *See* Kristensen Decl. ¶ 26; Exs. 1-15.

## V.   STANDARD FOR APPROVAL OF FLSA SETTLEMENTS

"When employees bring a private action for back wages under the [FLSA], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Because

"[t]he Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval," district courts in this Circuit widely follow the Eleventh Circuit's *Lynn's Food Stores* standard. *Rodriguez v. Nationwide Mutual Ins.Co., et al.*, No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796, at *1 (C.D. Cal. Nov. 16, 2017); *see also Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at *3 & n.5 (N.D. Cal. Apr. 15, 2014) (collecting cases applying *Lynn's Food Stores*).

Under *Lynn's Food Stores*, a district court may approve an FLSA settlement only if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Accordingly, FLSA settlements require the supervision of the Secretary of Labor or the district court. *See Lynn's Food Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

Under *Lynn's Food Stores*, the following factors are considered: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the Plaintiffs' case and the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, No.

6:06-cv-435-ORL-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

When considering these factors, the Court should keep in mind the "'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, at *3 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal citations omitted)). As discussed below, those factors strongly favor approval of these settlements.

## VI.   APPROVAL OF THE FLSA SETTLEMENTS

### A.   Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (quoting *Gonzalez v. Fallanghina, LLC*, No. 16-cv-01832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017)). "That is, there must be some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims." *Madrid v. teleNetwork Partners, LTD.*, No. 5:17-cv-04519-BLF, 2019 WL 3302812, at *3 (N.D. Cal. July 23, 2019).

The Court should approve the Agreements because they reflect a reasonable compromise of bona fide disputes regarding Defendants' alleged FLSA liability. There was no collusion in reaching the Agreements. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the Agreements reached were the result of good-faith, arms' length negotiation between the Parties. Mr. Kristensen has tried multiple employment cases and obtained substantial settlements against employers,

including against another exotic dance club in excess of a million dollars. Mr. Kristensen has been appointed class counsel, including three times since 2019. Mr. Kristensen has also settled in excess of fifty individual FLSA claims against strip clubs in the past two years, including during the COVID-19 pandemic. *See* Kristensen Decl. ¶¶ 2-25, 30-46, Exs. 20-36.

The Parties have strenuously different opinions about the classification of the dancers as employees or independent contractors and whether the dance fee charged by and collected by the Defendants belonged to the Defendants or was a tip belonging to Plaintiffs. The Parties engaged in discovery with the formal and informal exchange of documents, and a Motion for Notice pursuant to 29 U.S.C § 216(b). The Parties' counsel were cognizant and aware of each other's arguments and positions pertaining to employee classification. The Parties participated in settlement negotiations in good faith. The Parties defended their positions about the disputed aspects of the case and a resolution was ultimately reached.

Because the Parties disputed these aspects of the case, the purpose of the bona fide dispute requirement has been satisfied here. *See Saleh v. Valbin Corp*., No. 17-CV-0593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties.").

### B. Fair and Reasonable Resolution

To determine whether the settlement is fair and reasonable, the Court looks to the "totality of the circumstances" and the "purposes of [the] FLSA." *Selk*, 159 F.Supp.3d at 1173. In making this determination, courts consider the following factors: (1) the Plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement

agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See*, *e.g.*, *id.*; *Jennings*, 2018 WL 4773057, at *4. Plaintiffs will address each of these factors accordingly.

### 1.   *Plaintiffs' Possible Range of Recovery*

Regarding Plaintiffs' range of possible recovery, courts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable. *See*, *e.g.*, *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F.Supp.3d at 1175; *Glass v. UBS Financial Services, Inc.*, No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co.*, No. 15-CV-1066-EPG, 2018 WL 2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc.*, No. SACV 13-128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

Approximately, each dancer at Showgirls was owed the following per shift:

|                     |          |
|---------------------|----------|
| Minimum Wage:       | $116.00  |
| House/Stage Fees:   | $30.00   |
| DJ/Bartender Tips:  | $60.00   |
| Dance Tips:         | $15.00   |
| VIP Tips:           | $60.00   |
| **Total Loss / Shift:** | $281.00 |

Anspach worked at Showgirls from June 2005 to January 2020. Anspach worked for the full 3 years, or approximately 156 weeks, five nights a week. This is 780 shifts. Her estimated damages are $219,180.00.

Crane worked at Showgirls from 2016 to 2019, approximately 131 weeks and around 2 shifts per week. This is 262 shifts.  Her damages are $73,622.

Duran worked from February 2017 to December 2018, or approximately 99 weeks, five nights a week. This is 495 shifts. Her damages are $139,095.00.

///

Hammond worked from June 2018 to February 2020, or approximately 91 weeks, five nights a week. This is 455 shifts. Her damages are $27,855.00.

Hoyer worked from September 2018 to March 2020, or approximately 82 weeks, five nights a week. This is 410 shifts. Her damages are **$**115,210.00.

Johnson worked from 2016 to March 2020, or approximately 221 weeks, five nights a week. This is 1,105 shifts. Her damages are $310,505.00.

Mantikas worked from 2017 to March 2020, or approximately 169weeks, five nights a week. This is 845 shifts. Her damages are $237,445.

Nuckols worked from January 2017 to January 2019, or approximately 108 weeks, five nights a week. This is 540 shifts. Her damages are $151,740.00.

Ruiz worked from April 2018 to March 2020, or approximately 104 weeks, five nights a week. This is 520 shifts. Her damages are $149,120.00.

Suka worked from 2017 to July 2019, or approximately 134 weeks, five nights a week. This is 670 shifts. Her damages are $188,270.00.

Velazquez worked from April 2018 to March 2019, or approximately 52 weeks, five nights a week. This is 260 shifts. Her damages are $73,060.00.

Silva worked at Showgirls from May 2016 until November 2019. Her claims start in March 2017 under the UCL.  Ms. Silva's claim is for 32 months. She will testify she worked approximately 14 nights a month. Her claim is for 448 shifts. Her damages total $125,888.

Bellamy worked at Showgirls from April 2018 to July 2019. Her claim is for 14 months, with seven after the conversion. Her damages are estimated at $50,000.00.

Lloyd worked at Showgirls from 2016 until March 2020. Her claims start in March 2017 under the UCL.  Ms. Lloyd's claim is for 36 months. She will also testify she worked approximately 14 nights a month. Her claim is for 504 shifts. Her damages total $141,624.

///

**CZ | CARPENTER & ZUCKERMAN**

The Parties disputed the number of shifts and the hours worked by Plaintiffs. That played a role in evaluating the value of each claim.

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower damage wage and hour claims with clear liability. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [FLSA]." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014).

The Agreements reflect a substantial award to Plaintiffs. These resolutions are setting a benchmark for other settlements in FLSA dancer cases. Counsel spent considerable time litigating the matter which is evidenced in their lodestar. Plaintiffs' counsel's skill, tenacity and the potential of a large attorneys' fees award contributed to the overall settlement. This settlement is very favorable to Plaintiffs, and in light of the work performed in the lawsuit and the juncture of the settlement in the litigation, the settlement amounts are reasonable.

## 2. *The Stage of Proceedings and Amount of Discovery Completed*

The Court must next assess "the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Jennings*, 2018 WL 4773057, at *5 (quoting *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL

CZ|CARPENTER & ZUCKERMAN

2688224, at \*4 (N.D. Cal. June 22, 2017)). If the parties have "sufficient information to make an informed decision about [the] settlement, this factor weighs in favor of approval." *Id.* (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

The Parties had engaged in written discovery by the time mediation took place. As the Court is aware, the Parties had fully briefed several motions before the Court, including Plaintiff's motion for issuance of notice pursuant to section 216(b) of the FLSA. The settlement is the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiation between counsel. The Parties had a good understanding of the merits of their positions by the time of the mediation, which led to the settlement reached.

### 3.    *Seriousness of Litigation Risks Faced by the Parties*

Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Jennings*, 2018 WL 4773057, at \*5. Several facts in this case potentially jeopardize Plaintiffs' recovery should this case proceed to trial (or arbitration), including Defendants' written employment policies and testimony from supervisors contradicting Plaintiffs' claims, and Plaintiffs' potential inability to prove that Defendants' alleged violations were willful or ability to corroborate the number of hours and shifts worked. Accordingly, further litigation might result in Plaintiffs recovering less than the Settlement or perhaps nothing at all, so this factor weighs in favor of approving the FLSA settlement.

### 4.    *Scope of Any Release Provision in the Agreements*

Courts in this Circuit have rejected blanket releases of all potential claims against the employer for all unlawful acts whatsoever. *See*, *e.g.*, *McKeen-Chaplin v. Franklin Am. Mortg. Co*., No. 10-CV-5243-SBA, 2012 WL 6629608, at \*5 (N.D. Cal. Dec. 19, 2012) (ruling that the plaintiffs failed to demonstrate that it

would be fair and reasonable for a court to enforce a general release provision of all claims related to their employment in an FLSA settlement); *Garcia v. Jambox, Inc.*, No. 14-CV-3504-MHD, 2015 WL 2359502, *4 (S.D.N.Y. Apr. 27, 2015) (disapproving of release of all claims known and unknown against defendants, including those that seemingly had "no relationship whatsoever" to wage and hour issues); *Ambrosino v. Home Depot. U.S.A., Inc*., No. 11-CV-1319-MDD, 2014 WL 1671489, at *2-3 (S.D. Cal. Apr. 28, 2014) (same). However, when a district court in the Ninth Circuit approves an FLSA collective action settlement, it may approve a release of any claims sufficiently related to the current litigation. *See Selk*, 159 F.Supp.3d at 1178–79; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–89 (9th Cir. 1992)).

The Agreements here are similar to others approved in this District. *See Johnson v. The Strip Joint*, No.8:19-cv-01623-JVS-KES, Dkt. 29 (Jan. 31, 2020); *see also Woodmore v. Solitaire Holdings, LLC dba Knockouts*, No. 2:19-cv-09017-RGK-AGR, Dkt. 17 (Feb. 9, 2020). As such, the Agreements here do not weigh against approval.

### 5.  *Experience and Views of Counsel and Opinion of Participating Plaintiffs*

"In determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases.'" *Slezak*, 2017 WL 2688224, at *5 (quoting *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014)).

Plaintiffs' counsel and Defendants' counsel have substantial experience litigating wage and hour cases and handling complex and class actions. Counsel for the Parties knew the strengths and weaknesses of the opposing side's case as can be evidenced by the fully briefed motions before the Court. With the help of

an experienced mediator, well-versed in FLSA cases, the Parties were able to reach a Settlement. Plaintiffs' counsel's substantial experience and judgment resulted in this extraordinary Settlement. Additionally, all Plaintiffs have been made aware of the terms of the settlement and have signed the Agreements. Accordingly, this factor weighs in favor of approval.

### 6.   Possibility of Fraud or Collusion

When considering this factor, courts may look for indications that the plaintiffs' counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation" or for "evidence of more 'subtle signs' of collusion, such as 'when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded.'" *Selk*, 159 F. Supp. 3d at 1180 (quoting *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011)).

The Settlement was the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiations between counsel, aided by well-known and experienced mediator. While Plaintiffs' counsel is receiving payment of reimbursable costs and attorneys' fees from the Settlement, there is nothing out of the ordinary in this arrangement. *See Slezak*, 2017 WL 2688224, at *5 ("[C]ounsel is receiving a substantial fee. However, the class is also receiving a significant monetary benefit."); *Selk*, 159 F. Supp. 3d at 1179-80 ("[T]he amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records and an estimate of the degree of under-compensation during the relevant period. This approach guards against the arbitrariness that might suggest collusion." (citation omitted)). This factor therefore weighs in favor of approval.

///

///

///

1

**VII.   THE ATTORNEYS' FEES AND COSTS REQUEST IS REASONABLE**

2

    **A.     FLSA Collective Action Settlements Allow for a Greater**

3

             **Recovery of Attorneys' Fees Than Rule 23 Class Action**

4

             **Settlements**

5

    Plaintiffs' request for attorneys' fees is reasonable and in line with many

6

other district court orders granting similar fees in FLSA settlements. FLSA

7

settlements are distinct from Rule 23 class action settlements and, as such, allow

8

for a greater recovery of fees. Three California district judges (J. Walter, R.

9

Klausner, and J. Selna) have granted similar requests for attorneys' fees for

10

Plaintiffs' counsel within the last 2 years. *See* Kristensen Decl. ¶¶ 30-35; Exs. 20-

11

25.

12

    In Rule 23 class actions, attorneys more often than not seek fees in excess

13

of their lodestar by requesting that the court apply a positive modifier. *See In re*

14

*Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F.Supp.2d 249, 271 (D.N.H. 2007)

15

(approving Rule 23 class action settlement with lodestar multiplied of 2.697); *see*

16

*also In re TJX Companies Retail Sec. Breach Litig.*, 584 F.Supp.2d 395, 408

17

(D.Mass. 2008) (applying a lodestar multiplier of 1.97); *In re Visa*

18

*Check/MasterMoney Antitrust Litig.*, 297 F.Supp.2d 503, 524 (E.D.N.Y.

19

2003), aff'd sub nom. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d

20

Cir. 2005) (applying lodestar multiplier of 3.5). By contrast, here, Plaintiffs'

21

counsel merely seeks a negative or inverse multiplier, resulting in an award less

22

than their lodestar. *See* Kristensen Decl. ¶ 29; Exs. 16 & 18.

23

    FLSA settlements are subject to a different standard and allow for a greater

24

recovery of attorneys' fees than Rule 23 class action settlements in order to

25

encourage attorneys to take on these sorts of wage-and-hour cases. *See Tallman*

26

*v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1267 (D. Nev. 2014), *aff'd*, 655 F.

27

App'x 602 (9th Cir. 2016) ("there is no requirement that fee awards be

28

proportionate to the monetary recovery, unduly restricting fee awards would

CZ | CARPENTER & ZUCKERMAN

discourage attorneys from taking FLSA cases, and a successful FLSA claim vindicates statutory rights, even if it does not result in a substantial monetary recovery."); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (holding that a proportionality rule limiting attorney's fees to 33% of total settlement would also be inconsistent with the remedial goals of the FLSA); *see also Earls v. Forga Contracting, Inc.*, No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921, at *4 (W.D.N.C. June 9, 2020) (noting that "courts have rejected the notion that [FLSA] fee awards should be proportionately tied to a Plaintiffs' recovery." (quotation omitted)); *Kazanjian v. MSM Enterprises, Inc.*, No. CIV. 93-227-P-C, 1995 WL 140153, at *3 (D.Me. Mar. 15, 1995) ("in an FLSA fee determination, a court should not place *undue* emphasis on the amount recovered by a plaintiff since the award of fees 'encourages the vindication of congressionally identified policies and rights,' even if the recovery is only nominal.").

Indeed, the public policy encouraging attorneys to take on FLSA cases often results in situations where the attorney's fees surpass the Plaintiffs' award. *See Bonnette v. California Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir.1983) (affirming $100,000 in attorney fees on a judgment of $18,455 in damages); *SKF USA Inc. v. Bjerkness*, Nos. 08 C 4709, 09 C 2232, 2011 WL 4501395, at *3 (N.D. Ill. 2011) (refusing to reduce a $1.3 million dollar award of attorneys' fees when the damages were only $81,068 because Congress predetermined the claim was worth bringing even though there was great disparity between the amount recovered and the attorneys' fees requested); *also Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994) ((affirming attorney fees of $40,000 on a judgment of $7,680 for overtime compensation); *Lucio–Cantu v. Vela*, 239 Fed. App'x. 866 (5th Cir.2007) (finding no abuse of discretion in award of $51,750 in attorney fees on a recovery of $4,679). In this case however, Plaintiffs' attorneys merely seek an amount in fees totaling 45% of the total settlement, which is less than

their lodestar. *See* Kristensen Decl. ¶¶ 26, 29; Exs. 1-16, 18.

Therefore, the Court here should not limit itself in awarding attorney's fees as if this case were a Rule 23 class action. It is not a class action, but instead a collective action with public policy considerations that afford a more generous calculation of fees.

**B.    Plaintiffs' Attorneys' Fees Totaling 45% of the Settlement Is a Reduction of the Lodestar and Would Therefore Be a Reasonable Award**

It is well settled that a reasonable amount of fees is determined pursuant to the "lodestar approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019) ("[t]o determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method."); *Mills v. Cabral*, No. CIV.A. 06-10133-RGS, 2010 WL 2553889, at *1 (D.Mass. June 18, 2010) ("[i]n determining an appropriate award of fees and costs under the FLSA, the court employs the lodestar approach."); *Marrotta v. Suffolk Cty.*, 726 F.Supp.2d 1, 25 (D.Mass. 2010) (approving FLSA attorneys' fees at lodestar amount).

In this case, Plaintiffs' counsel has a lodestar of $514,791.35. *See* Kristensen Decl. ¶ 29; Exs. 16 & 18. However, Plaintiffs' counsel is merely seeking $513,000 in fees, which is less than their lodestar and consists of 45% of the total settlement. *See id.* In other words, Plaintiffs' counsel is seeking less than what they would otherwise be entitled to based on the time they have spent litigating this matter. *See id.*

The fees sought in this matter are commensurate with the time and effort exerted to achieve a favorable settlement and the overall skill of Plaintiffs'

CZ|CARPENTER & ZUCKERMAN

1    attorneys. Plaintiffs' counsel is well versed in both FLSA collective actions and

2    Rule 23 class actions and have achieved numerous successful outcomes.

3    Furthermore, Plaintiffs' attorneys' hourly rates are reasonable and are similar to

4    those approved by other district courts throughout the country.

5        In *Macklin v. Biscayne Holding Corp et al*, 1:19-cv-00561-WES-PAS

6    (D.R.I. 2019), Plaintiffs' counsel sought approval of a similar FLSA settlement

7    involving the wage and hour claims of exotic dancers. *See* Kristensen Decl. at ¶¶

8    42-44; Exs. 32-34. In the *Macklin* case, Plaintiffs' counsel sought a reduction of

9    their lodestar and a fee award consisting of 45% of the settlement. *See id.* There,

10   Judge Smith found both the settlement and the attorney's fees and costs to be

11   reasonable. *See id.*

12       Also, while the lodestar amount is presumed to be a reasonable calculation

13   of attorneys' fees, it is within the Court's discretion to adjust the lodestar figure.

14   *See Marrotta*, 726 F.Supp.2d at 25.  Within the past two years alone, three

15   separate judges in California have granted Plaintiffs' counsel's request to apply a

16   negative modifier to the lodestar in order to achieve a fee award comprising of

17   45% of the total FLSA settlement. *See* Kristensen Decl. at ¶¶ 30-35, Exs. 20-25.

18   District courts in Florida and Wisconsin have followed suit and also granted

19   Plaintiffs' counsel attorney's fees totaling 45% of the settlement. *See* Kristensen

20   Decl. at ¶¶ 36-39, Exs. 26-29.

21       Ultimately, the FLSA settlements in this case represent a far more

22   favorable outcome for Plaintiffs than if they pursued their claims through a Rule

23   23 class action. By virtue of their sheer size, class actions often lead to a smaller

24   award for each individual plaintiff. In *Hart v. RCI Hosp. Holdings, Inc.*, No. 09

25   CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015), a similar exotic-

26   dancer wage-and-hour class case settled for roughly $15 million. *See Hart*, 2015

27   WL 5577713 at *5. However, the Rule 23 class comprised of 2,208 members and

28   each only received on average $4,254.98. *See id.* Similarly, in *Ortega v. The*

*Spearmint Rhino Companies Worldwide Inc., et al.,* 5:17-cv-00206-JGB-KK (C.D. Cal. July 5, 2021), the district court awarded a net settlement amount of $2,600,000 to an exotic dancer class action. *See* Kristensen Decl. at ¶ 40, Ex. 30. However, the class consisted of 650 individuals and the awards averaged out to only $4,000 per class member. *See id; see also Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 2494569, at *3 (N.D. Cal. May 14, 2020) (granting preliminary approval of Rule 23 settlement on behalf of exotic dancers that would pay "$836 per class member"); *Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101, at *5 (E.D. Mich. June 19, 2017), *aff'd sub nom. Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (approving Rule 23 settlement on behalf of exotic dancers, many of whom worked in California, where "the average payment from the cash pool will be around $200"); Kristensen Decl. at ¶ 41, Ex. 31, *Byrne v. Santa Barbara Hospitality Services, Inc.*, C.A. No. 17-00527, Dkt. 178 (C.D. Cal. Dec. 14, 2018) (approving settlement proposing to pay 566 claiming class members between $350,884 to $598,453, or average shares of between $620 and $1,057 per participating class member).

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion in its entirety.

Dated: February 14, 2022      Respectfully submitted,

By: */s/ John P. Kristensen*
John P. Kristensen (SBN 224132)
*kristensen@cz.law*
Jesenia A. Martinez (SBN 316969)
*jmartinez@cz.law*
**CARPENTER & ZUCKERMAN**
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Monday, February 14, 2022 a true and correct copy of the attached **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF FLSA SETTLEMENT** and accompanying documents were served via CM/ECF upon all participants of record, including the following parties listed below, pursuant to Fed. R. Civ. P. 5:

Devon M. Lyon
**LYON LEGAL, P.C.**
2698 Junipero Avenue, Suite 201A
Signal Hill, California 90755
Email: d.lyon@lyon-legal.com

***Counsel for Defendants***

*/s/ John P. Kristensen*
John P. Kristensen