JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-2184 JGB (SPx)** | Date | April 21, 2022 |
|---|---|---|---|
| Title | ***Rebecca Anspach, et al. v. 68-444 Perez, Inc., et al.*** | | |

Present: The Honorable  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiffs' Motion for Settlement Approval under the Fair Labor Standards Act (Dkt. No. 133); and (2) VACATING the April 25, 2022 Hearing (IN CHAMBERS)

Before the Court is Plaintiffs' Motion for Approval of Settlement Agreement under the Fair Labor Standards Act ("FLSA"). ("Motion," Dkt. No. 133.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the matter, the Court GRANTS the Motion and DISMISSES the case. The Court VACATES the hearing set for April 25, 2022.

## I. BACKGROUND

This is a collective action by former and current exotic dancers allegedly misclassified as independent contractors by their employers. On November 13, 2019, Katrina Harris filed a complaint against Defendants 68-444 Perez, Inc. d/b/a Showgirls, Abdul Wahab Shawkat, Doe Manages 1-3, and Does 4-100 (collectively, "Original Defendants"), alleging violations of the FLSA and the California Civil Code. ("Complaint," Dkt. No. 1.) Between January 16, 2020 and March 3, 2020, Ms. Harris filed and served Notices of Consent to Join for Alexandra Mantias, Gina Rea, Rylee Ferguson, Andjela Suka, Crystal Corona, Antonia Crane, Marissa Duran, and Shanon Nuckols (collectively, "Opt-In Plaintiffs"). (Dkt. Nos. 16, 19, 21, 22, 27, 28, 30.)

On March 20, 2020, the Court granted Defendants' motion to compel arbitration and stayed proceedings as to Ms. Harris's claims, and denied Defendants' request to dismiss the Opt-In Plaintiffs' claims. (Dkt. No. 33.) On April 23, 2020, the Court granted a motion for

preliminary certification of a collective action filed by Ms. Harris and the Opt-In Plaintiffs (collectively, "Original Plaintiffs"). (Dkt. No. 41.)

Between May 13, 2020 and June 17, 2020, the Original Plaintiffs filed Notices of Consent to Sue for Karli Beckett and Mandy Johnson, respectively. (Dkt. Nos. 46, 49.) Subsequently, Ashley Marie Elizardo, Kimberly Ann Hoyer, Akilah Hammond, Vanessa Ruiz, Neli Velazquez, Rebecca Anspach, and Caitlynn Boles also joined the collective action. (Dkt. Nos. 54, 55, 57.)

On July 2, 2020, the Court granted Defendants' motion to compel arbitration of Ms. Ferguson, Ms. Corona, Ms. Mantikas, and Ms. Crane and stayed proceedings with respect to their claims. (Dkt. No. 53.) On November 3, 2021, the Court approved the parties' stipulation to lift the stay as to Ms. Ferguson. (Dkt. No. 110.)

Throughout this time, some plaintiffs filed notices of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a) ("Rule 41(a)"): Ms. Rea filed a notice of voluntary dismissal on June 17, 2020 (Dkt. No. 50); Ms. Elizardo filed a notice of voluntary dismissal on September 8, 2020 (Dkt. No. 62); and Ms. Boles filed a notice of voluntary dismissal on August 9, 2021. (Dkt. No. 95.)

On December 15, 2020, Ms. Harris filed a notice of settlement. (Dkt. No. 67.) However, unable to effectuate the settlement, Original Plaintiffs filed a motion to reopen the case on February 4, 2021. (Dkt. No. 69.) On March 3, 2021, the Court granted the motion and reopened the case. (Dkt. No. 74.)

On June 30, 2021, the Court entered the parties' stipulation to consolidate the instant case with a separate action against Defendants, Marlene Silva, et al. v. 68-444 Perez, Inc., et al., 5:21-cv-00397-JGB-SP. (Dkt. No. 84.)

On September 7, 2021, Ms. Anspach, Ms. Beckett, Ms. Duran, Ms. Hammond, Ms. Hoyer, Ms. Johnson, Ms. Nuckols, Ms. Ruiz, Ms. Suka, Ms. Velazquez, Marlene Silva, Mikayla Bellamy, and Chellsee Lloyd (collectively, "Plaintiffs") filed a consolidated complaint. ("Consolidated Complaint," Dkt. No. 98.) The Consolidated Complaint added Sahar Shawkat as a Defendant. (Id.) The Consolidated Complaint alleged twelve causes of action: (1) failure to pay minimum wage pursuant to the FLSA, 29 U.S.C. § 206; (2) failure to pay overtime wages pursuant to the FLSA, 29 U.S.C. § 207; (3) unlawful taking of tips in violation of the FLSA, 29 U.S.C. § 203; (4) illegal kickbacks in violation of 29 C.F.R. § 531.35; (5) forced tipping in violation of 29 C.F.R. § 531.35; (6) failure to pay minimum wage in violation of Cal. Labor Code §§ 1194, 1197; (7) failure to pay overtime wages in violation of Cal. Labor Code §§ 510, 1194, 1197; (8) failure to furnish accurate wage statements in violation of Cal. Labor Code § 226, et seq.; (9) waiting time penalties in violation of Cal. Labor Code §§ 201–203; (10) failure to indemnify business expenses in violation of Cal. Labor Code § 2802; (11) compulsion and coercion to patronize employer and/or other persons in violation of Cal. Labor Code § 450; and (12) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. (Id.)

On September 17, 2021, Ms. Harris, Ms. Ferguson, and Ms. Beckett filed Notices of Acceptance of Defendants' Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. (Dkt. Nos. 99, 101, 103.) Ms. Harris, Ms. Ferguson, and Ms. Beckett also filed Notices of Lodging Regarding Judgment. (Dkt. Nos. 100, 102, 104.) On December 13, 2021, the Court entered judgment in favor of Ms. Ferguson, Ms. Beckett, and Ms. Harris against Defendants. (Dkt. Nos. 122, 123, 124.)

On November 15, 2021, Plaintiffs filed a motion for partial summary judgment. (Dkt. No. 112.) On January 21, 2022, Plaintiffs withdrew the motion without prejudice pending settlement approval. (Dkt. Nos. 127, 128.)

On February 14, 2022, Plaintiffs filed the instant Motion. (See Mot.) In support, Plaintiffs filed the declaration of John P. Kristensen with attached exhibits. ("Kristensen Declaration," Dkt. No. 133-1.) The exhibits include the universal settlement agreement pertaining to Plaintiffs' claims ("Agreement," Dkt. No. 133-2) and each Plaintiff's individual settlement agreement. (Dkt. Nos. 133-3–133-16.)

On February 28, 2022, Plaintiffs notified the Court that Defendants had not filed an opposition or notice of non-opposition to the Motion. (Dkt. No. 134.)

On March 15, 2022, the Court ordered Plaintiffs to file supplemental briefing to clarify the settlement amount. (Dkt. No. 136.) Plaintiffs filed supplemental briefing on March 18, 2022, which included the supplemental declaration of Mr. Kristensen. (Dkt. No. 137; "Supplemental Kristensen Declaration," Dkt. No. 137-1.) On March 21, 2022, the Court ordered additional supplemental briefing to clarify the settlement amount for Ms. Mantikas. (Dkt. No. 138.) On March 22, 2022, Plaintiffs filed a second supplemental declaration of Mr. Kristensen in response. ("Second Supplemental Kristensen Declaration," Dkt. No. 139.) On March 23, 2022, the Court ordered additional supplemental briefing to address remaining deficiencies. (Dkt. No. 140.) On March 25, 2022, Plaintiffs filed a third supplemental brief. ("Third Supplemental Brief," Dkt. No. 141.)

## II.  LEGAL STANDARD

The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by a contract. Beidleman v. City of Modesto, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018) (citing Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013)). Thus, employee claims under the FLSA cannot be waived for fear that employers may coerce employees into settlement and waiver. Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 175 (S.D.N.Y. 2015)). FLSA claims may only be waived or settled if settlement is supervised by the Secretary of the U.S. Department of Labor or approved by a federal district court. Id.

"The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved." Beidleman, 2018 WL 1305713, at *2. Courts in this circuit have instead relied on the standard adopted by the Eleventh Circuit, which considers whether a "settlement represents a 'fair and reasonable resolution of a bona fide dispute.'" Selk, 159 F. Supp. 3d at 1172 (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982)). "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'" Id. (quoting Ambrosino v. Home Depot U.S.A., Inc., 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014)); see also Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (listing, for example, issues regarding "FLSA coverage or computation of back wages"). "A court will not approve a settlement … [if] there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute." Beidleman, 2018 WL 1305713, at *2.

Once a court finds that a bona fide dispute exists, it will often assess the FLSA settlement under the same factors used to evaluate a proposed class action settlement pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). Seguin v. County of Tulare, 2018 WL 1919823, at *2 (E.D. Cal. Apr. 24, 2018). Application of the Rule 23 factors alone, however "runs the risk of not giving due weight to the policy [of protecting labor rights] behind the FLSA" that is not inherent to Rule 23. Selk, 159 F. Supp. 3d at 1173. Accordingly, courts apply "a totality of circumstances approach" to FLSA settlements. Id. Courts consider: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. Id. If, under these factors, "the settlement reflects a reasonable compromise over issues that are actually in dispute," then "the court may approve the settlement.'" Id.

## III. DISCUSSION

The Court examines (1) whether a bona fide dispute exists between the parties, and (2) whether the Agreement is fair and reasonable in the totality of circumstances.

### A. Bona Fide Disputes

The Court finds that bona fide disputes exist between the parties. Plaintiffs' FLSA claims require the existence of "employer-employee relationships." Torres-Lopez v. May, 111 F.3d 633, 638 (9th Cir. 1997) (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947)). Here, "[t]he Parties have strenuously different opinions about the classification of the dancers and employees or independent contractors." (Mot. at 8.) Plaintiffs assert that Defendants misclassified them as independent contractors instead of correctly as employees, while Defendants disagree. (Id.; Consolidated Compl. ¶¶ 67, 98–99, 112.) The parties also hold bona fide disputes about Plaintiffs' unlawful kickbacks and forced tipping claims. (Mot. at 8.)

Plaintiffs assert that "the dance fee charged by and collected by Defendants" were Plaintiffs' tips, while Defendants contend that the fees are Defendants'. (Id. at 3-4.) Finally, for Plaintiffs' wage and hour claims, the parties dispute "the number of shifts and dates each dancer worked." (Id. at 4.) Accordingly, the Court concludes that these competing views reflect bona fide disputes. See Johnson v. Serenity Transp., Inc., 2020 WL 7260059, at *2 (N.D. Cal. Dec. 10, 2020) (finding bona fide dispute where parties disputed "Plaintiffs' classification status and Defendants' liability under California and federal wage and hour laws throughout this case").

### B. Proposed Settlement Is Fair and Reasonable

The Court next evaluates the six factors discussed above to determine whether the Agreement is fair and reasonable under the totality of the circumstances. Selk, 159 F. Supp. 3d at 1173. For the reasons below, the Court concludes that the Agreement is fair and reasonable.

#### 1. Plaintiffs' Range of Possible Recovery

"A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." Selk, 159 F. Supp. 3d at 1174 (citations omitted).

The parties have agreed to settle this case for $1,140,000.00. (Mot. at 3.) Of this amount, a little over half of the settlement represents Plaintiffs' total recovery, whereas the remainder is allocated for attorneys' fees and costs:

- Plaintiffs' total recovery:   $590,980.89   (51.8%)
- Attorneys' fees:   $513,000.00   (45%)
- Costs:   $36,019.11   (3.4%)

(Id.) The recovery for the fourteen individual Plaintiffs is as follows:

| Plaintiff | Estimated Damages | Gross Settlement Amount | Costs | Fees | Net Settlement Amount |
|---|---|---|---|---|---|
| Rebecca Anspach | $219,180.00 | $125,000.00 | $2,624.86 | $56,250.00 | $66,125.14 |
| Mikayla Bellamy | $50,580.00 | $65,000.00 | $2,624.86 | $29,250.00 | $33,125.14 |
| Antonia Crane | $73,622.00 | $25,000.00 | $3,036.07 | $11,250.00 | $10,713.93 |
| Marissa Duran | $139,095.00 | $125,000.00 | $2,624.86 | $56,250.00 | $66,125.14 |
| Akilah Hammond | $127,855.00 | $75,000.00 | $2,624.86 | $33,750.00 | $38,625.14 |

| Kimberly Ann Hoyer | $115,210.00 | $80,000.00 | $2,624.86 | $36,000.00 | $41,375.14 |
| Mandy Johnson | $310,505.00 | $125,000.00 | $2,624.86 | $56,250.00 | $66,125.14 |
| Chellsee Lloyd | $141,624.00 | $75,000.00 | $2,624.86 | $33,750.00 | $38,625.14 |
| Alexandra Mantikas | $237,445.00 | $15,000.00 | $1,484.73 | $6,750.00 | $6,765.27 |
| Shanon Nuckols | $151,740.00 | $125,000.00 | $2,624.86 | $56,250.00 | $66,125.14 |
| Vanessa Ruiz | $146,120.00 | $90,000.00 | $2,624.86 | $40,500.00 | $46,875.14 |
| Marlene Silva | $125,888.00 | $90,000.00 | $2,624.86 | $40,500.00 | $46,875.15 |
| Andjela Suka | $188,270.00 | $35,000.00 | $2,624.86 | $15,750.00 | $16,625.14 |
| Neli Velazquez | $73,060.00 | $90,000.00 | $2,624.86 | $40,500.00 | $46,875.14 |
| **TOTAL:** | **$2,100,194.00** | **$1,140,000.00** | **$36,019.11** | **$513,000.00** | **$590,980.89** |

(Mot. at 9–10; see Suppl. Br.; 2d Suppl. Kristen Decl. ¶ 2; 3d Suppl. Br. at 2.) As part of the Agreement, but excluded from the total settlement amount, Defendants will also pay Ms. Harris $50,000.00 for her attorneys' fees and costs and to satisfy the Court's judgment of $25,000.00 entered in her favor. (Kristensen Decl. ¶ 29 n.1; Dkt. No. 124.)

       Plaintiffs argue that the Agreement reflects a substantial award. (Mot. at 11.) The Court agrees. The average net settlement amount is $42,750.00 per Plaintiff. As Plaintiffs note, this recovery is much higher than that in settlements for similar cases. (3d Suppl. Br. at 5.) See, e.g., Roe v. Jose Torres L.D. Latin Club Bar, Inc., 2020 WL 2494569, at *3 (N.D. Cal. May 14, 2020) (approving settlement awarding $836 per class member). Individual recovery is not uniform, but Plaintiffs adequately explain this difference. The parties set damages at $281.00 per shift, multiplied this rate by the estimated number of shifts worked for each Plaintiff, then adjusted the figure based on the strength of the Plaintiff's claims. (Mot. at 9–10.) For example, the parties disagreed on the number of hours and shifts each Plaintiff worked, partly due to Defendants' alleged practice of destroying time sheets. (Id. at 11.) Documentation and witness attestations available to prove each claim also varied significantly and affected the valuation of the individual claims. (3d Suppl. Br. at 5.) Finally, the two Plaintiffs with lower recoveries arbitrated their claims outside of the current settlement. Accordingly, the Court concludes that the potential recovery is reasonable. See, e.g., Hart v. RCI Hosp. Holdings, Inc., 2015 WL 5577713, at *11 (S.D.N.Y. 2015) ("The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weakness of plaintiffs' case.'"). This factor weighs in favor of settlement approval.

//
//
//

### 2. Stage of Proceedings and Amount of Discovery Completed

The Court next considers the stage of the proceedings and the amount of discovery completed to ensure the parties "have an adequate appreciation of the merits of the case before reaching a settlement." Selk, 159 F. Supp. 3d at 1177. As discussed above, the parties have litigated this case extensively. They have engaged in written discovery, took part in mediation, and fully briefed several motions, including a summary judgment motion. (Mot. at 12; Kristensen Decl. ¶ 27.) The parties represent that the Agreement is a result of extensive pre-suit investigation. (Id.) The Court concludes that the parties have conducted sufficient discovery to understand their relative litigation positions. Accordingly, this factor weighs in favor of approval.

### 3. Seriousness of the Litigation Risks Faced by the Parties

"Courts favor settlement where 'there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all.'" Seguin, 2018 WL 1919823, at *4 (quoting Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015)). Here, Plaintiffs identify the following barriers to recovery, or even prevailing, at trial: (1) the existence of Defendants' written employment policies and testimony of supervisors that contradict Plaintiffs' claims, (2) the difficulties of corroborating the number of hours and shifts worked by each Plaintiff, and (3) the potential inability to prove that Defendants' alleged violations were willful. (Mot. at 12.) Accordingly, this factor also weighs in favor of approval.

### 4. Scope of Any Release Provision in the Settlement Agreement

"A[n] FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." Slezak v. City of Palo Alto, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017). The Agreement includes a general release and a waiver of California Civil Code Section 1542, as well as a specific release of claims under the FLSA and California Labor Code arising from a Plaintiff's employment relationship with Defendants. (Kristensen Decl., Exs. 1–2.) Though broad, these provisions are not blanket releases of all potential claims, but sufficiently related to the current litigation. Accordingly, the Court concludes that the release does not exceed the FLSA's scope. This factor weighs in favor of approval.

### 5. Experience and View of Counsel and the Opinion of Plaintiffs

"The opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." Selk, 159 F. Supp. 3d at 1176. Plaintiffs' lead counsel, Mr. Kristensen, declares that he is a partner at Carpenter & Zuckerman. (Kristensen Decl. ¶ 1.) He specializes in class actions and has been appointed Class Counsel in three matters in the Central District of California. (Id. ¶¶ 9–15.) Both Mr. Kristensen and Defendants' counsel have substantial experience litigating wage and hour cases and complex actions. (Mot. at 13–14.) Plaintiffs' counsel represents that the Settlement achieves "extraordinary" results. (Kristensen Decl. ¶ 53.) Under these facts, the Court concludes that this factor weighs in favor of approval.

### 6. Possibility of Fraud or Collusion

"The likelihood of fraud or collusion is low … [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." Slezak, 2017 WL 2688224, at *5. Here, the parties reached the Agreement through good faith, arm's-length negotiations. (Mot. at 12, 14.) They underwent mediation with an experienced mediator and reached the Agreement as a result. (Id. at 13–14.) Accordingly, this factor weighs in favor of approval.

In sum, all six factors weigh in favor of approval of the Agreement. The Court concludes that, under the totality of the circumstances, the Agreement constitutes a fair and reasonable resolution of bona fide disputes over FLSA claims. The Court GRANTS the Motion for settlement approval and APPROVES the Agreement.

### C. Attorneys' Fees and Costs

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." Selk, 159 F. Supp. 3d at 1180 (quoting Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)); see also 29 U.S.C. § 216(b) (finding that a court "shall … allow a reasonable attorney's fee to be paid by the defendant" when an employer violates certain FLSA provisions). "When a settlement produces a common fund for the benefit of the entire class, a court has the discretion to apply either the percentage-of-recovery method or the lodestar method to determine a reasonable attorney's fee." Dashiell v. County of Riverside, 2018 WL 3629915, at *5 (C.D. Cal. July 19, 2018) (citing Selk, 159 F. Supp. 3d at 1180). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 949 (9th Cir. 2015).

Here, the Agreement allocates $513,000.00 in attorneys' fees and $36,019.11 in costs. The fee award of $513,000.00 represents 45% of the total settlement amount, which Plaintiffs' counsel declares is pursuant to retainer agreements with some of the Plaintiffs.[1] While this percentage is higher than the 25% benchmark deemed reasonable by the Ninth Circuit, Selk, 159 F. Supp. 3d at 1180, Plaintiffs' counsel notes that other district courts have approved their attorneys' fees requests of 45% of the settlement in similar cases. (Mot. at 18; Kristensen Decl. ¶¶ 29–46.) Moreover, the requested fee amount is slightly less than the actual lodestar of $514,791.35. (Mot. at 17.) Plaintiffs' counsel submits sufficient documentation of their hours and hourly rates that corroborates their lodestar calculation. (Kristensen Decl., Exs. 16, 18.) In addition, Plaintiffs' counsel provides documentation to support their requested litigation costs.

---

[1] Plaintiffs' counsel specifically notes that the retainer agreements with Ms. Mantikas and Ms. Craine provide for the recovery of 45% of the settlement amount in attorneys' fees. (Suppl. Kristensen Decl. at 3.) However, Plaintiffs' counsel does not make similar representations about any of the other Plaintiffs.

Accordingly, the Court concludes that the requested attorneys' fee amount of $513,000.00 and costs of $36,019.11 are reasonable.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion. The Court:

1. APPROVES the Motion for Approval of FLSA Settlement;

2. ORDERS Defendants 68-444 Perez, Inc. d/b/a Showgirls, Abdul Wahab Shawkat, and Sahar Shakat to make the payments and perform the conditions contained in the Agreement within forty-five calendar days of this order or of Defendants' receipt of a Plaintiff's signed Agreement and release of claims;

3. DISMISSES WITH PREJUDICE the action upon Defendants making said payments;

4. AWARDS Plaintiffs' counsel attorneys' fees and costs in the amount of $549,019.11; and

5. VACATES the hearing set for April 25, 2022.

6. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**